UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-MC-61696-SMITH/VALLE

IN RE ENGLAND/BAHAMAS,
Application of Richard A. Hayward and Susan J. Heath
for an Order Pursuant to 28 U.S.C. § 1782 to Conduct
Discovery for Use in a Foreign Proceeding.

**ORDER ON MOTION TO QUASH § 1782 SUBPOENA
AND MOTION FOR PROTECTIVE ORDER**

THIS CAUSE is before the Court upon Patricia Bloom's: (i) Motion for Protective Order (ECF No. 10) (the "Motion for Protective Order"); and (ii) Motion to Quash Subpoena Issued Upon Ex Parte Application Pursuant to 28 U.S.C. § 1782 (ECF No. 11) (the "Motion to Quash") (together, the "Motions"). United States District Judge Rodney Smith referred this action to the undersigned for appropriate resolution. (ECF No. 5). The undersigned has carefully reviewed the Motions, all supporting and opposing submissions, the record in this case, and applicable law. For the reasons set forth below, the Motion to Quash is **DENIED** and the Motion for Protective Order is **GRANTED IN PART**.

**I.     BACKGROUND**

On August 21, 2020, Richard A. Hayward and Susan J. Heath, individually and on behalf of certain other beneficiaries of the Lydhurst Settlement,[1] the 1993 Lydhurst Settlement, and the Dunmaglass Settlement (the "Applicants"), commenced their Ex Parte Application for an order pursuant to 28 U.S.C. § 1782 for issuance of a subpoena for Patricia Bloom's deposition in

---

[1] All capitalized terms not otherwise defined herein are defined as set forth in the § 1782 Application. *See generally* (ECF No. 1)

connection with a prospective claim against the Estate of Sir Jack Hayward[2] ("the Estate"). *See generally* (ECF No. 1) (the "§ 1782 Application"). According to the § 1782 Application, Applicants intend to initiate a proceeding in England or the Bahamas against the Estate of their father, Sir Jack. (ECF No. 1 at 1). In that contemplated proceeding, Applicants will seek specific performance by the Executrix of the Estate of written agreements made by Sir Jack in three letters (the "2007 Letters") to pay the maintenance and operating expenses of two UK land estates (the Lydhurst and Dunmaglass estates, hereafter the "Properties").[3] Although the Estate is being administered in the Bahamas, the Executrix of the Estate—Sir Jack's long-time partner, Patricia Ruth Bloom—is a United States citizen who resides in this District, in Broward County, Florida. *Id.* In aid of Applicants' contemplated foreign proceeding, Applicants sought an order from this Court authorizing them to take the deposition of Ms. Bloom, who allegedly has personal knowledge of the 2007 Letters underlying Applicants' prospective claim and Sir Jack's performance and nonperformance under those contracts. *See generally* (ECF No. 1).

On September 8, 2020, the undersigned granted the § 1782 Application. (ECF No. 6). In granting the § 1782 Application, the undersigned concluded that "Applicants ha[d] demonstrated grounds for relief under 28 U.S.C. § l782 [and were] authorized to serve a subpoena for deposition testimony upon Patricia Ruth Bloom, and to depose Ms. Bloom on the Topics and issues set forth in the Application, which are relevant to the governing law, the proper forum, and the merits of

---

[2] Sir Jack Arnold Hayward ("Sir Jack") was an English businessman, property developer, philanthropist and president of English football club Wolverhampton Wanderers (the "Wolves"). https://en.wikipedia.org/wiki/Jack_Hayward (last visited July 29, 2021); *see also* the § 1782 Application (ECF No. 1). Sir Jack died in 2015.

[3] The Properties are owned by different trusts settled by Sir Jack. (ECF No. 11 at 3). According to Ms. Bloom, Applicants appear to be the beneficiaries of these trusts, which Ms. Bloom describes as "Land Trusts." (ECF Nos. 11 at 3). Applicants argue they are parties to the 2007 Letters and are seeking specific performance of those contracts. (ECF No. 22 at 7).

the claim for specific performance of contractual undertakings that Applicants intend to assert in the contemplated foreign proceeding." *Id*. at 2-3.

On September 30, 2020, Ms. Bloom moved to quash the subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure, arguing that Applicants did not satisfy § 1782's statutory requirements nor the discretionary factors set forth in *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).[4] *See generally* (ECF No. 11). Ms. Bloom simultaneously filed the Motion for Protective Order seeking to limit the scope discovery and areas of inquiry for the § 1782 deposition. *See generally* (ECF No. 10). Both Motions have been extensively litigated[5] and are ripe for adjudication.[6]

---

[4] The parties agreed to postpone Ms. Bloom's deposition pending ruling by the Court on the Motion to Quash. (ECF No. 11 at 2 n.2).

[5] The Motions include several declarations and underlying documentary materials spanning hundreds of pages. *See* (ECF Nos. 10, 11, 22, 26, 27).

[6] As an initial matter, there is a split of authority in this District on whether a motion to quash a third-party subpoena under § 1782 is a non-dispositive, pretrial matter. *Compare In re Victoria, LLC*, No. 18-MC-21202, 2018 WL 11229127, at *3 (S.D. Fla. Dec. 26, 2018) (compiling case law to conclude that magistrate judge has jurisdiction to issue an order on a motion to quash a § 1782 subpoena) *with In re da Costa Pinto*, No. 17-MC-22784, 2018 WL 6620905, at *4-5 (S.D. Fla. Aug. 27, 2018) (recognizing that courts are split on the issue and favoring a report and recommendation "in an abundance of caution"), *report and recommendation adopted*, 2018 WL 6620132 (S.D. Fla. Oct. 23, 2018); *In re Emergency Ex Parte Application of Godfrey*, No. 17-CV-21631, 2018 WL 1863749, at *6-7 (S.D. Fla. Feb. 22, 2018), r*eport and recommendation adopted sub nom. In re Godfrey*, 2018 WL 1859344 (S.D. Fla. Mar. 15, 2018) (same). To date, the Eleventh Circuit has declined to rule on this jurisdictional issue and has instead found that a party who fails to timely object has waived any challenge to the referral of a § 1782 application to the magistrate judge. *Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009). Here, there has been no objection to the referral of this matter to the undersigned for "appropriate disposition." (ECF No. 5). Moreover, absent binding precedent and given the parties' aggressive litigation record, the undersigned finds that in the interest of efficient case management, the Motions should be handled by order pursuant to 28 U.S.C. § 636(b)(1)(A). The parties' right to challenge or otherwise appeal this Order in accordance with the Federal Rules of Civil Procedure remains intact.

## II.     MOTION TO QUASH

### A.     Section 1782 Application

In granting the § 1782 Application, this Court implicitly recognized that § 1782 allows a District Court to assist in the discovery phase of a civil or criminal proceeding in a foreign or international tribunal. *See generally* (ECF No. 6). Pursuant to the § 1782 Application, Applicants sought and were granted authority to issue and serve a subpoena on Ms. Bloom. *Id*. Pursuant to § 1782, a District Court has the authority to grant an application for judicial assistance if the following statutory requirements are met:

> (1) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance; (2) the request must seek evidence which is either the testimony or statement of a person or the production of a document or other thing; (3) the evidence must be *for use in a proceeding in a foreign or international tribunal*; and (4) the request must be made by an *interested person*.

28 U.S.C. § 1782 (emphasis added). When these requirements are met, § 1782(a) "authorizes, but does not require, a federal district court to provide assistance." *In re Pons,* No. 19-MC-23236, 2020 WL 1860908, at *2 (S.D. Fla. Apr. 13, 2020), *aff'd sub nom. Pons v. AMKE Registered Agents, LLC*, 835 F. App'x 465 (11th Cir. 2020) (citing *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 264, (2004)). "[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *In re Kivisto*, 521 F. App'x 886, 888 (11th Cir. 2013) (citing *Intel*, 542 U.S. at 264)).

Once the § 1782 statutory requirements are met, the District Court considers the following discretionary factors:

> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding . . . ;(2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering

> restrictions or other policies of a foreign country or the United States; and
> (4) whether the request is otherwise unduly intrusive or burdensome.

*Victoria, LLC v. Likhtenfeld,* 791 F. App'x 810, 817 (11th Cir. 2019) (quoting *Intel,* 542 U.S. at 264-65); *In re Kivisto,* 521 F. App'x at 888 (same). The District Court also may consider whether the application contains unduly intrusive or burdensome requests, is made in bad faith, for the purpose of harassment, or is part of a fishing expedition. *Victoria*, 791 F. App'x at 817; *In re Kivisto,* 521 F. App'x at 888.

### B. Rule 45 Motion to Quash

Rule 45 of the Federal Rules of Civil Procedure governs motions to quash subpoenas. The Rule permits a court to modify or quash a subpoena where, among other things, it "subjects a person to undue burden" or implicates the "disclosure of privileged or protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(A). Moreover, a motion to quash a subpoena issued under § 1782 is left to the discretion of the court, which is undisturbed unless the court makes a clear error of judgment or applies the wrong legal standard. *Victoria*, 791 F. App'x at 815 (citation omitted).

### C. The § 1782 Application Satisfies the Statutory Requirements

In the Motion to Quash, Ms. Bloom argues that Applicants do not satisfy the third and fourth statutory requirements for relief under § 1782 because Applicants are not "interested persons" and the contemplated claim is too "speculative" with only a "tenuous" connection between Ms. Bloom's testimony and the claim. *See* (ECF No. 11 at 8-11). According to Ms. Bloom, the § 1782 Application was improperly procured through incomplete information, conclusory statements, misrepresentations, and speculation, including a declaration of Edward Hall, Applicants' UK attorney, regarding the contemplated claim. *Id.* at 3, 5-6.

*1. Applicants are "interested persons"*

Ms. Bloom argues that Applicants have not satisfied the "interested persons" element of § 1782 because Applicants have not shown they have standing to bring the contemplated claim for specific performance in England or the Bahamas. *Id.* at 8-9. At the crux of this argument is the relationship between Applicants, the 2007 Letters, and the Properties. According to Ms. Bloom, although Applicants are beneficiaries of the Land Trusts, they do not have a right of payment or standing to bring claims against the Estate on behalf of the Land Trusts. *Id.* at 8. Ms. Bloom argues that payment under the 2007 Letters belongs to the Land Trusts, not Applicants. *Id.* In response to the Motion to Quash, Applicants argue that they have standing to bring their claim for specific performance. (ECF No. 22 at 6). More specifically, Applicants assert that they "are parties to contracts, and they are seeking to enforce those contracts by an order for specific performance."[7] *Id.* at 7. Applicants further assert that "challenges to an applicant's standing to bring the foreign proceeding is an issue for the foreign tribunal and not the district court evaluating the appropriateness of relief under [§] 1782." *Id.*

Based on the record before the Court and the relevant law, the undersigned finds that a determination of Applicants' standing in a potential suit (whether filed in England or the Bahamas) delves into the underlying merits of the claims, which is not for this Court to consider under § 1782. *See, e.g., Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding*

---

[7] In support of their arguments, Applicants submitted a legal opinion of Nicholas Caddick, QC, regarding, among other things, the Applicants' rights to enforce the equitable remedy of specific performance. *See generally* (ECF No. 22-2). In response, Ms. Bloom asserts that this declaration and other "new" submissions should be stricken as they improperly introduce new grounds and evidentiary support for the § 1782 Application. (ECF No. 27 at 4-7) (also discussing declarations of Stephen Green and Edward Hall). Other than her summary request to strike the declarations, Ms. Bloom does not provide support for her request. Thus, the undersigned will consider all of the submissions filed in these proceedings, which are responsive to Ms. Bloom's arguments in the Motion to Quash.

*(USA), Inc.*, 747 F.3d 1262 (11th Cir. 2014) (emphasizing that appeal of district court denial of a motion to quash a subpoena issued under § 1782 was not about the underlying disputed issues). Indeed, guided by the Eleventh Circuit's directive in *Consorcio*, this Court has no occasion to address "whether any other underlying dispute among the parties and related persons has merit," as these disputes will likely be resolved in the foreign tribunal. *Application of Consorcio*, 747 F.3d at 1268. Thus, the undersigned will not address the underlying merit of whether Applicants have standing to pursue their contemplated claims abroad.

Moreover, to qualify as an "interested person" under § 1782, Applicants need only show that they have a "reasonable interest in obtaining judicial assistance." *Intel,* 542 U.S. at 256. An application under § 1782 "plainly reaches beyond the universe of persons designated 'litigant.'" *Id.* Here, the parties agree that Applicants are trust beneficiaries and parties to the 2007 Letters. *See* (ECF No. 11 at 8 n.4, 9).[8] Accordingly, Applicants have satisfied this statutory requirement of being an "interested person." *See e.g., Matter of de Leon*, No. 19-MC-0197 (TSC), 2020 WL 1047742, at *1 (D.D.C. Mar. 4, 2020) (approving § 1782 subpoenas to a beneficiary of an estate who sought discovery to determine the value of estate assets); *In re Pimenta*, 942 F. Supp. 2d 1282, 1284 (S.D. Fla. 2013), *adhered to sub nom. In re de Melo Pimenta,* No. 12-MC-24043, 2013 WL 12157798 (S.D. Fla. Aug. 20, 2013) (permitting discovery under § 1782 to applicants who asserted they needed discovery to contest a will in Brazil).

2. *Evidence for use in a proceeding in a foreign or international tribunal*

Ms. Bloom also argues that Applicants failed to establish that Ms. Bloom's anticipated testimony will be used in a foreign proceeding. *See generally* (ECF No. 11 at 9-11). In challenging

---

[8] *See also* (ECF No. 11-1 at 7-8) (Ms. Bloom's declaration describing the 2007 "undertakings" as being the result of a family dispute where the beneficiaries of a family trust (and the Applicants in particular) were willing to offer a release only in exchange for Sir Jack's agreement to undertake the maintenance and repair costs of the Properties).

this statutory requirement, Ms. Bloom makes several arguments. First, Ms. Bloom alleges that Applicants have failed to demonstrate that the contemplated claim is "anything but speculative," and have failed to provide concrete representations about when the proceedings will be filed. *Id.* at 11. Ms. Bloom also argues that Applicants have failed to address the effect of any delay upon the viability of their "contemplated" claim, including whether the claim is time-barred by the statute of limitations. *Id.* Ms. Bloom further argues that Applicants knowingly waived the claims against the Estate in a November 2015 letter agreement where "Applicants procured [Ms.] Bloom's cooperation in yet another trust dispute . . . by expressly denying any intent to assert any claims against the Estate." *Id.* Next, Ms. Bloom asserts that many of the 14 Topics listed in the subpoena: (i) are unrelated to the purported claim; (ii) improperly delve into confidential or privileged Estate-related matters; and (iii) are efforts to gain leverage against Ms. Bloom and remove her as a beneficiary of a 1993 Trust. *Id.* at 12-13. Lastly, Ms. Bloom argues that her lay testimony regarding jurisdiction and applicable law would not be considered by foreign courts. *Id.* at 13. In response, Applicants dispute Ms. Bloom's assertions and reiterate that these are all issues for the foreign tribunal to consider, not this Court.[9] (ECF No. 22 at 10).

Courts have transitioned from a narrow interpretation of the "for use in a foreign proceeding" requirement of § 1782, to a far more liberal construction. Indeed, the Supreme Court has interpreted the 1964 and 1996 amendments to § 1782 as providing great leniency in the District Courts' discretion to grant § 1782 applications when evaluating the requirement of "for use in a

---

[9] Applicants also responded to the merits of each argument. *See* (ECF No. 22 at 8-12). The Court will not, however, conduct a detailed analysis of the merits, which the undersigned agrees will ultimately be determined by the foreign tribunal. Rather, the undersigned focuses primarily on fostering the twin aims of the statute: providing an efficient means of assistance to participants in international litigation and encouraging foreign countries to provide reciprocal assistance to our courts. *In re Pimenta*, 942 F. Supp. 2d at 1289.

8

foreign proceeding."[10] *See Intel*, 542 U.S. at 248-49. As well, the Eleventh Circuit and courts in this District have further held that § 1782 "does not purport to impose a requirement that a foreign proceeding be at a certain stage prior to discovery being granted." *In re NRC Holding, Ltd.*, No. 14-MC-61962, 2015 WL 541770, at *2 (S.D. Fla. Feb. 10, 2015) (citing to Eleventh Circuit holding in *Consorcio*, which affirmed the district court's decision to grant a § 1782 discovery request where that application was made before the applicant commenced litigation in the foreign tribunal, finding that the foreign proceedings were within "reasonable contemplation"). In *Consorcio*, the Eleventh Circuit explained that for a proceeding to be within "reasonable contemplation," "[t]he future proceeding[] must be more than speculative . . . and a 'district court must insist on reliable indications of the likelihood that proceeding[] will be instituted within a reasonable time.'" 747 F.3d at 1270 (citing *In re Letter Request from the Crown Prosecution Serv. of the UK*, 870 F.2d 686, 691 (D.C. Cir. 1989) (Ginsburg, J.) (describing the "decisive" question as whether there was "sufficient indication that a proceeding in court would eventuate in which the evidence gathered can be weighed impartially").

Here, Applicants have submitted sufficient evidence in support of the § 1782 Application. More specifically, the § 1782 Application included: (i) extensive background regarding the historical framework underlying the parties' current dispute (*see generally* ECF No. 1); (ii) documentary evidence regarding the 2007 Letters and the Deed of Release and Indemnity

---

[10] In *Intel*, the Supreme Court rejected the prior view that § 1782 applies only when foreign proceedings are "pending" or "imminent." *Id.* at 259 (rejecting the Second Circuit's interpretation, expressed in *In re Ishihara Chem. Co.*, 251 F.3d 120, 125 (2d Cir. 2001), that "imminent" means "very likely to occur and very soon to occur"). Rather, the Supreme Court determined that § 1782 requires only that such proceeding be within reasonable contemplation. *Id.* at 259 (citation omitted); Hans Smit, *International Litigation under the United States Code*, 65 Colum. L. Rev. 1015, 1026 (1965) ("It is not necessary . . . for the [adjudicative] proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding.")

(ECF Nos. 1-1 to 1-5); (iii) a declaration of attorney Hall that, among other things, presents a theory of relief wherein Applicants intend to seek specific performance against the Estate pursuant to the 2007 Letters (ECF No. 1-6); and (iv) a draft statement of claim that has been circulated to Ms. Bloom's counsel (ECF No. 1-6 at 7-18). In addition, Applicants supplemented the § 1782 Application with additional declarations and email correspondence. *See generally* (ECF No. 22-1) (declaration from attorney Stephen M.C. Green); (ECF No. 22-2) (declaration from attorney Nicholas Caddick); (ECF No. 22-3) (email communications from Ms. Bloom on behalf of Sir Jack to numerous individuals); (ECF No. 26-1) (supplemental declaration of attorney Hall). Moreover, in the supplemental materials, attorney Hall declares that it is Applicants' intention to "bring the [foreign] proceeding within 90 days of obtaining Ms. Bloom's discovery." (ECF No. 26-1 at 3).

Against this evidence and without determining the merits of the contemplated claim (which is best left to the foreign court), the undersigned finds that Applicants have submitted a facially legitimate and sufficiently detailed explanation that they are "interested persons" who intend to commence a civil action in England or the Bahamas within a reasonable time. *See, e.g., Application of Consorcio*, 747 F.3d at 1270-71 (concluding that applicants had satisfied the prima facie requirements of § 1782 where they submitted "reliable indications," including audits, memorandums of law, and declarations); *see also Intel*, 542 U.S. 259 (rejecting the requirement that foreign proceeding be imminent or pending). Accordingly, Applicants have met the statutory requirements to obtain discovery under § 1782.[11]

---

[11] The undersigned is also unpersuaded that the § 1782 Application is a pretext to intimidate or harass Ms. Bloom. (ECF No. 11 at 2, 6, 13). On the contrary, the materials supporting the § 1782 Application and the subsequent filings by the parties (including a lengthy declaration by Ms. Bloom (ECF No. 11-1)) demonstrate a history of contested litigation between the Applicants, Ms. Bloom, and other family members, spanning many years, which includes this most recent § 1782 Application.

### D. The Discretionary *Intel* Factors Weigh in Favor of Applicants

Once the statutory requirements are met, as here, District Courts look to the four *Intel* factors to evaluate a subpoena issued under § 1782. *In re Pons,* 2020 WL 1860908, at *8 (citing *In re Clerici,* 481 F.3d 1324, 1334 (11th Cir. 2007)). Ms. Bloom argues that, even if the statutory requirements of § 1782 are satisfied, the discretionary factors set forth in *Intel* weigh against granting the § 1782 Application and support quashing the subpoena for her deposition. (ECF No. 11 at 4, 13-18). Here, Ms. Bloom challenges the first, third, and fourth *Intel* factors. (ECF No. 11 at 14-18).

*1. First Factor: Participation in a Foreign Proceeding*

When a person from whom discovery is sought is a participant in the foreign proceeding, the need for § 1782 assistance is not as apparent as when evidence is sought from a non-participant in the foreign matter. *Intel*, 542 U.S. at 264. Here, the parties agree that, as Executrix to the Estate, Ms. Bloom would be a defendant in the "contemplated proceeding," but they disagree on how her potential role as a defendant affects this factor.

Ms. Bloom, on the one hand, argues that Applicants have provided insufficient evidence and conclusory statements to support their proposition that Ms. Bloom's testimony is determinative regarding jurisdiction and choice of law.[12] (ECF No. 11 at 15-16). Applicants, on the other hand, contend that it would be more practical and efficient for Applicants to avail themselves of § 1782 to obtain discovery because: (i) a foreign proceeding has yet to be initiated; (ii) Ms. Bloom resides in Florida and not in England or the Bahamas; and (iii) it is unclear how a foreign tribunal could enforce a potential pre-suit discovery order against Ms. Bloom. (ECF No. 22 at 14).

---

[12] Ms. Bloom also challenges attorney Hall's declaration on this factor as "barebones" and "conclusory." (ECF No. 11 at 16).

11

The undersigned finds that although Ms. Bloom's role as a potential defendant in a foreign proceeding is not dispositive of the first factor, it nonetheless weighs in favor of Applicants. Here, it remains unclear whether a foreign tribunal could enforce a pre-suit discovery order against Ms. Bloom, who resides in this District. *See, e.g., In re Clerici*, 481 F.3d at 1334-35 (concluding that first *Intel* factor did not favor respondent because Panamanian court could not enforce its order against a respondent living in the United States); *see also In re Godfrey*, 2018 WL 1863749, at *8 ("participation in the foreign proceedings does not automatically foreclose § 1782 aid where there has been noncompliance with discovery obligation) (citation omitted). Moreover, the first factor is related to the third factor discussed below (regarding the foreign tribunal's ability to order pretrial discovery, which the parties dispute). Accordingly, based on the factual circumstances of this case and the uncertainty surrounding the availability and enforcement of pretrial discovery in a foreign tribunal (whether in England or the Bahamas), the first *Intel* factor weighs in favor of Applicants.[13]

### 2. Third Factor: Circumvention of Foreign Proof-Gathering Restrictions

The third *Intel* factor considers whether the § 1782 request "attempt[s] to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65. "Although courts need not determine if an applicant has exhausted its discovery attempts abroad, 'a perception that an applicant has 'side-stepped' less-than-favorable

---

[13] Although Ms. Bloom does not challenge the second *Intel* factor (i.e., receptivity of discovery by foreign tribunal), the undersigned briefly addresses it for completeness. Case law suggests that both England and the Bahamas are receptive to § 1782 discovery, including deposition testimony. *See, e.g., In re Novoship (UK) Ltd.*, No. 20-MC-60876, 2020 WL 3286308, at *3 (S.D. Fla. June 18, 2020) (noting that § 1782 is routinely used to obtain evidence for proceedings in the United Kingdom); *In re Application of Strand Invs. Ltd.*, No. 09-CIV-21985, 2009 WL 2225536, at *1 (S.D. Fla. July 24, 2009) (granting § 1782 application for deposition and documents as "the requested discovery would likely not meet procedural roadblocks in the Bahamas"). Accordingly, the second *Intel* factor weighs in favor of Applicants.

12

discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *In re Application of MTS Bank*, No. 17-MC-21545, 2017 WL 3276879, at *11 (S.D. Fla. Aug. 1, 2017) (citation omitted).

Ms. Bloom argues that in filing their initial Application, Applicants did not address whether Bahamian or UK law allows for oral depositions prior to commencement of an action. (ECF No. 11 at 17). According to Ms. Bloom, in the UK for example, a court order is necessary for pre-suit discovery.[14] *Id.* In response, Applicants assert that the relevant question for this factor is not whether the foreign jurisdiction has rules and procedures that allow the specific type of discovery, but rather whether the jurisdiction restricts parties from using evidence obtained through other lawful means. (ECF No. 22 at 16).

In weighing this factor, case law suggest that "a district court should be vigilant against a petitioner's attempt to 'replace a foreign decision with one by a U.S. court.'" *In re MTS Bank*, 2017 WL 3276879, at *11 (citations omitted). Nonetheless, the fact that the requested discovery would not be discoverable in the foreign proceeding is not enough to convert the § 1782 application into an attempt to circumvent the foreign rules. *Id.* Here, although neither England nor the Bahamas appear to facilitate fact-gathering through pre-suit discovery, the undersigned is unaware of any authority to support the conclusion that either jurisdiction would prohibit parties from obtaining and using deposition testimony obtained elsewhere.[15] *See, e.g., In re MTS Bank*, 2017 WL 3276879, at *11 (concluding that third *Intel* factor weighed in favor of applicants where district court was unaware of any restrictions by Russian courts in proof-gathering procedures

---

[14] Ms. Bloom asserts that this Court erroneously granted the initial § 1782 Application without consideration of this third factor, which supports quashing of the subpoena. (ECF No. 11 at 17).

[15] In reply, without reference to any authority, Ms. Bloom summarily asserts that the transcript of her deposition would be inadmissible in the foreign jurisdictions. (ECF No. 27 at 10 n.13).

13

that would prohibit applicant from obtaining and introducing § 1782 discovery).  Indeed, as noted above, other courts in this District have granted § 1782 applications for discovery to be used in the UK noting that § 1782 "is routinely used to obtain evidence for proceedings in that country." *In re Novoship*, 2020 WL 3286308, at *3.  Accordingly, the third *Intel* factor weighs in favor of Applicants.

   *3. Fourth Factor: Overbroad and Unduly Burdensome Discovery*

The fourth *Intel* factor is whether an application contains "unduly intrusive or burdensome requests," is "made in bad faith, for the purpose of harassment," or is part of a "fishing expedition."  *In re Kivisto,* 521 F. App'x at 888 (citations omitted).  Ms. Bloom filed a separate Motion for Protective Order, which is discussed further below.  Nevertheless, in the Motion to Quash with regard to the fourth factor, Ms. Bloom generally argues that the subpoena is "intrusive and unduly burdensome."  (ECF No. 11 at 17-18).  Applicants dispute that the subpoena is overbroad, noting that Applicants seek to take only one deposition of Ms. Bloom (without a request for documents) on 14 Topics about which Applicants assert Ms. Bloom has personal knowledge.  (ECF No. 22 at 17-19).

For the reasons set forth more fully below in discussing the Motion for Protective Order, the undesigned finds that the discovery requests are not unduly intrusive or burdensome.  Accordingly, the fourth *Intel* factor weighs in favor of Applicants.

In sum, the undersigned finds that Ms. Bloom has not presented persuasive evidence to quash the § 1782 subpoena.  More specifically, Applicants have satisfied the § 1782 statutory requirements and the *Intel* discretionary factors weigh in their favor.  Accordingly, Ms. Bloom's Motion to Quash is denied.

### III. MOTION FOR PROTECTIVE ORDER

#### A. Discovery and Protective Orders Generally

Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b).[16] The scope of discovery, however, is not limitless. A party opposing discovery "must show either that the requested discovery: (i) does not come within the broad scope of relevance defined under Rule 26; or (ii) is of such marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of discovery." *Arnstein & Lehr LLP v. Etkin & Co., Inc.*, No. 15-CV-62703, 2016 WL 11501337, at *4 (S.D. Fla. Nov. 23, 2016). Moreover, under Rule 26(c)(1), "any person from whom discovery is sought may move for a protective order . . . to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1). If the party seeking a protective order demonstrates "good cause," a court may issue a protective order providing a variety of remedies, such as precluding the discovery altogether or "specifying terms . . . for the disclosure of discovery." Fed. R. Civ. P. 26(c)(1)(A)-(B). "Good cause" has been defined as a "sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987).

Here, in addition to seeking to quash the § 1782 subpoena, Ms. Bloom has filed a Motion for Protective Order to limit the areas of inquiry for the deposition. *See generally* (ECF No. 10). Ms. Bloom generally challenges the relevancy of the 14 Topics listed in the § 1782 subpoena

---

[16] More specifically, discovery should be proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.*

(ECF No. 1-6 at 4) and further seeks to limit the deposition to: (i) testimony in her individual capacity (versus as Executrix of the Estate); and (ii) only four hours due to her advanced age.[17] (ECF No. 10 at 9-10).  The Court considers each of the arguments in turn.

### B.  Topics 1 and 2[18]

*(i)   Sir Jack's financial troubles in 2007; and*

*(ii)  the behavior of Sir Jack in 2007, which his children and grandchildren perceived to be irrational and which gave rise to the family dispute regarding Wolves.*

Based on a review of the record, the undersigned finds that these Topics may be relevant to the context in which the 2007 Letters were negotiated, the terms of the 2007 Letters, and the factors that may have influenced Sir Jack's performance or non-performance under the contracts. Without determining the merits of the claims or defenses, these Topics fall within the broad scope of relevant discovery.

### C.  Topic 3

*The series of negotiations and undertakings made to resolve the family dispute over the disposition of the ownership interest in Wolves.*

Ms. Bloom disputes that there is "any link" between her and the negotiations referenced in this Topic.  *Id.* at 6.  Nevertheless, she includes reference and details regarding the 2007 Letters in her declaration.  *See generally* (ECF No. 11-1).  Thus, Ms. Bloom's own statements undermine her arguments.  Accordingly, this Topic is proper and seeks relevant information.

### D.  Topics 4, 5, and 6

*(iv) where the various contracts were negotiated and executed;*

*(v) the location of the lawyers who drafted the contracts and who were involved in the negotiations; and*

---

[17] Ms. Bloom is 86 years old.

[18] Ms. Bloom characterizes Topics 1 through 11 as seeking information in her individual capacity. (ECF No. 10 at 5).

16

*(vi) the identities (and locations) to the witnesses to the contracts and other evidence.*

Ms. Bloom argues that these topics have no bearing on jurisdiction and choice of law, but are in bad faith and meant to harass. (ECF No. 10 at 7-8). Without deciding the merits of the parties' positions, the undersigned finds that the Topics fall within the broad scope of discovery.

That said, the Court finds that these Topics should be clarified. First, in Topic 4, the phrase "various contracts" is limited to the 2007 Letters. Further, the clause "other evidence" in Topic 6 is deleted as vague and overbroad. As amended by the Court, Topics 4, 5, and 6 are proper and within the broad scope of discovery.

### E. Topics 7 through 11

*(vii) the location of Sir Jack during the negotiations;*

*(viii) the location(s) where the performance of the contracts was contemplated and made;*

*(ix) how the payments were made or procured to be made by Sir Jack, including (1) details of the bank accounts through which payments were routed and (2) the removal of sums from the Weydon Trust (of which Sir Jack was not a beneficiary) to finance such payments;*

*(x) Sir Jack's performance under the Contracts; and*

*(xi) Whether a particular forum or country's law was contemplated at the time the Contracts were negotiated.*

Ms. Bloom objects to these topics asserting that Applicants where present for the negotiation of the 2007 Letters, so they or their counsel would presumably have knowledge on these issues. *Id.* at 8. She also asserts that she was not Sir Jack's "surrogate nor contractual proxy." *Id.* Ms. Bloom further asserts that the request regarding the "Weydon Trust" is not relevant to the contemplated claim. *Id.*

First, whether the Applicants were present for the negotiation of the 2007 Letters does not

17

bar discovery from Ms. Bloom. Moreover, the mention of a different trust (i.e., Weydon Trust) not previously defined in the filings, will not bar discovery given that there are numerous trusts and contracts among the parties and this is but one that may relate to the claims and defenses at issue. Accordingly, these Topics are proper and within the broad scope of discovery.

### F. Topics 12, 13, and 14[19]

*(xii) how the subject of liability to perform the Contracts has been dealt with by Ms. Bloom after the death of Sir Jack, including any efforts undertaken to investigate, verify, and agree upon sums due;*

*(xiii) the assets and liabilities of Sir Jack's estate, including the estate accounts showing the assets that have been realized and remain to be realized, the liabilities that have been satisfied, and what, if any, distributions have been made;*

*(xiv) the fact that between 2016 and 2018 negotiations occurred between English solicitors for Ms. Bloom and English solicitors for Applicants in which the liability to make payment and its details and quantum were dealt with between the parties.*

The contemplated proceedings involve an alleged claim for specific performance pursuant to the 2007 Letters against the Estate of Sir Jack. As Executrix of the Estate, Ms. Bloom's understanding of the Estate's obligations (if any) are relevant to the claims at issue. To the extent that these requests call for disclosure of confidential information, the parties may enter into a confidentiality order. Lastly, any concerns regarding disclosure of privileged information may be preserved through a proper objection during the deposition and, if necessary, court intervention upon an appropriate motion filed before the Court. Accordingly, these Topics as Executrix are proper for a deposition.

### G. Other Limitations to the Deposition

As amended by the Court, the deposition Topics are proper. Moreover, based upon Applicant's agreement, Ms. Bloom's deposition may be conducted via Zoom (or other remote

---

[19] According to Ms. Bloom, these topics concern her capacity as the Executrix of the Estate. (ECF No. 10 at 9).

video options) and can proceed (if necessary) on two separate days, for a total of seven hours. (ECF No. 24 at 10-11). Barring agreement of the parties or further Court order on this issue, Ms. Bloom's deposition must proceed within 30 days from the date of this Order.

## IV. CONCLUSION

For the reasons set forth above, Ms. Bloom has failed to establish that the § 1782 Application for a deposition was contrary to law. At this stage of the proceeding, Applicants have satisfied the statutory requirements of § 1782. The undersigned also finds that the discretionary *Intel* factors weigh in favor of permitting the requested deposition pursuant to the § 1782 Application. Accordingly, it is hereby **ORDERED AND ADJUDGED** that Ms. Bloom's Motion to Quash Subpoena Issued Upon Ex Parte Application Pursuant to 28 U.S.C. §1782 (ECF No. 11) is **DENIED**.

Additionally, the undersigned finds that the deposition topics may be relevant to the contemplated claim and defenses and Ms. Bloom's Motion for Protective Order (ECF No. 10) is **GRANTED IN PART** as set forth above.

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida on July 30, 2021.

*/s/ Alicia O. Valle*
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Rodney Smith
All Counsel of Record